# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for First Chicago Bank & Trust, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 12-CV-5107 |
| | ) | Judge Amy J. Ste. Eve |
| SOUTHPORT FINANCING COMPANY LLC; STEVEN DISSE, | ) ) | Magistrate Judge Arlander Keys |
| | ) ) | |
| Defendants. | ) | |

## FIRST AMENDED AND RESTATED COMPLAINT
### TO
### ENFORCE NOTES AND GUARANTEES, TO FORECLOSE MORTGAGES, AND FOR OTHER RELIEF

(3734 North Southport Avenue, Chicago, Illinois 60613)

The Federal Deposit Insurance Corporation, as receiver for First Chicago Bank & Trust, an Illinois savings bank (the **"Receiver"**), sues:

- Southport Financing Company LLC (the **"Hypo Loan Borrower"**)

- Steven Disse (the **"Hypo Loan Guarantor"**, together with the Hypo Loan Borrower collectively, the **"Hypo Loan Debtors"**)

- Let the Good Times Roll, L.L.C. (**"Good Times"**)

- Blue Bayou, L.L.C. (together with Good Times, collectively, the **"Ravenswood Borrowers"**)

- Sheila Henaghan (**"Henaghan"**)

- Michael J. Cullen (**"Cullen"**, together with Henaghan, collectively, the **"North Community Borrowers"**)

- William Platt (**"Platt"**; together with Henaghan, and Cullen, collectively, the **"Ravenswood Guarantors"**, and together with the Ravenswood Borrowers collectively, the **"Ravenswood Debtors"**)

- North Star Trust Company, successor to Mid Town Bank and Trust Company of Chicago, as Trustee under Trust Agreement dated November 17, 2000 and known as Trust No. 2342 (**"North Star"**, and the trust established under the trust agreement, as amended, the **"Land Trust"**)

- Northbrook Bank & Trust Company (**"Northbrook Bank & Trust"**)

- The City of Chicago (the "**City**")

- Blue Bayou Southport, L.L.C. (**"Blue Bayou *Southport*"**)

- B.B. Southport, Inc. (**"B.B. Southport"**)

- Unknown owners of the Property (defined below)

- Non-record claimants in, to, or against the Property

The Receiver further alleges:

<u>**NATURE OF THIS LAWSUIT**</u>

1.    The Receiver is suing to:

a.    Enforce a promissory note and enforce a guaranty, each a component of a hypothecation (the **"Hypo Loan"**).

b.    Enforce a note originally made to the Community Bank of Ravenswood, a/k/a Ravenswood Bank (**"Ravenswood Bank"**), enforce guarantees of that note, and foreclose a mortgage granted to secure that note (each a component of the **"Ravenswood Loan"**).

c.    Enforce a *pair* of notes originally made to the North Community Bank and foreclose a mortgage granted to secure those notes (each a component of the **"North Community Loans"**, each respectively, a **"North Community Loan"**, together with the Ravenswood Loan collectively, the **"Mortgage Loans"**, and each individually, a **"Mortgage Loan"**).

2

## Background General Allegations

### The Litigants

2.     The **Receiver** is a corporation chartered by Congress and serves as the receiver of the now failed First Chicago Bank & Trust, an Illinois savings bank (**"First Chicago"**). Before failing, First Chicago maintained its principal place of business in Itasca, DuPage County, Illinois.

3.     The **Hypo Loan Borrower** is an Illinois limited liability company with its principal place of business in Rosemont, Illinois.

4.     The **Hypo Loan Guarantor** is an individual. He is a citizen of the State of Illinois and resides in Chicago, Illinois. He personally guaranteed the Hypo Loan.

5.     **Good Times** is an Illinois limited liability company with its principal place of business in Chicago, Illinois. Under the Land Trust, Good Times holds equitable title to the Property that the Receiver seeks to foreclose against.

6.     **Henaghan** is an individual.  She is a citizen of the State of Illinois and resides in Chicago, Illinois.

7.     **Cullen** is an individual.  He is a citizen of the State of Illinois and resides in Chicago, Illinois.

8.     **Platt** is an individual.  He is a citizen of the State of Illinois and resides in Chicago, Illinois.

9.     **Blue Bayou** is an Illinois limited liability company with its principal place of business in Chicago, Illinois.

10.     **Northbrook Bank & Trust** is organized under Illinois law and its principal place of business is in Northbrook, Illinois. Northbrook Bank & Trust is a successor mortgagee under a mortgage against the Property (defined below) originally granted by North Star to First Chicago dated December 22, 2010 and recorded January 20, 2011 as document no. **1102034073** among the official records of Cook, County, Illinois (the **"Northbrook Mortgage"**). The Receiver sues Northbrook Bank & Trust *exclusively in rem* to foreclose against the Northbrook Mortgage and

Northbrook Bank & Trust's interest in the Property; the Receiver does *not* seek *in personam* relief in this case against Northbrook Bank & Trust.

11.     The **City** is a municipal corporation organized under Illinois law with its principal place of business in Chicago, Illinois.  The City has claimed a lien against the Property for $2,125.02 for water and sewer services recorded on March 14, 2008 as document number **0807401106** (the "**Water Lien**").  The Receiver sues the City *exclusively in rem* to foreclose against the City's interest in the Property and the Water Lien; the Receiver does *not* seek *in personam* relief in this case against the City.

12.     **North Star** is an Illinois corporation with its principal place of business in Chicago, Illinois. As trustee under the land Trust, North Star now holds fee simple title to the Property that the Receiver seeks to foreclose against. The Receiver sues the North Star *exclusively in rem* to foreclose against the North Star's interest in the Property; the Receiver does *not* seek *in personam* relief in this case against the North Star.

13.     **Blue Bayou *Southport*** is an Illinois limited liability company with its principal place of business in Chicago, Illinois. Blue Bayou Southport may hold a possessory interest in all or a part of the Property as a tenant, licensee, or under some other right.

14.     **B.B. Southport** is an Illinois corporation with its principal place of business in Chicago, Illinois. B.B. Southport may hold a possessory interest in all or a part of the Property as a tenant, licensee, or under some other right.

JURISDICTION AND VENUE

15.     This court has subject matter jurisdiction in this case because, with the Receiver as plaintiff, under 12 U.S.C. §1219(b)(2)(A), the claims alleged in this complaint arise under the laws of the United States, conferring federal question jurisdiction on this court under 28 U.S.C. §1331.

4

16.     Venue is proper in this court because:

a.      The transactions from which this case arises took place within the Northern District of Illinois, *e.g.*, making of the Hypo Loan Note (as defined below), granting of the Hypo Loan Guaranty (defined below), making of each Mortgage Loan Note (defined below), granting of each Ravenswood Loan Guarantee (defined below), and granting of each Mortgage (defined below).

b.      The Hypo Loan Borrower maintains its principal place of business in the Northern District of Illinois.

c.      The Hypo Loan Guarantor resides in the Northern District of Illinois.

d.      Good Times maintains its principal place of business in the Northern District of Illinois.

e.      Blue Bayou maintains its principal place of business in the Northern District of Illinois.

f.      Northbrook Bank & Trust maintains its principal place of business in the Northern District of Illinois and claims the Northbrook Mortgage against the Property, which is located in the Northern District of Illinois..

g.      Henaghan resides in the Northern District of Illinois.

h.      Cullen resides in the Northern District of Illinois.

i.      Platt resides in the Northern District of Illinois.

j.      The City maintains its principal place of business in the Northern District of Illinois and claims the Water Lien against the Property, which is located in the Northern District of Illinois.

k.      North Star maintains its principal place of business in the Northern District of Illinois and, under the Land Trust, holds legal title to the Property which is in the Northern District of Illinois.

l.      Blue Bayou *Southport* maintains its principal place of business in the Northern District of Illinois and may hold an interest in the Property, which is located in the Northern District of Illinois.

m.      B.B. Southport maintains its principal place of business in the Northern District of Illinois and may hold an interest in the Property, which is located in the Northern District of Illinois.

5

## RECEIVER AS RECEIVER FOR FIRST CHICAGO

17.     On July 8, 2011, the Illinois Department of Financial and Professional Regulation declared First Chicago insolvent, closed First Chicago, and appointed the Receiver as receiver for First Chicago.

18.     Under 12 U.S.C. §1821(d)(2)(A), the Receiver has succeeded to all rights, titles, powers, and privileges of First Chicago, including the Hypo Loan Documents (defined below). Consequently, the Receiver became the holder of the Hypo Loan Note, and the beneficiary of the Hypo Loan Guaranty.

## STRUCTURE OF THE LOANS

19.     On May 19, 2010, First Chicago loaned $930,000 to the Hypo Loan Borrower (the **"Hypo Loan"**). In exchange, the Hypo Loan Borrower made—by manually subscribing—a Replacement Promissory Note in the principal amount of $930,000 payable to the order of First Chicago (the **"Hypo Loan Note"**). A copy of the Hypo Loan Note is attached as **Exhibit 19**[†] to this complaint.

20.     As explained in more detail below, the Hypo Loan Borrower hypothecated each Mortgage Loan to First Chicago as collateral for the Hypo Loan.

21.     Ravenswood Bank was the original lender under the Ravenswood Loan. The Ravenswood Loan is secured by a mortgage against property commonly known as 3734 North Southport Avenue, Chicago, Illinois (that mortgage identified in more detail in paragraph **57** the **"Ravenswood Mortgage"**, and that property identified in more detail in paragraph **57**, the **"Property"**). And the Ravenswood Guarantors guaranteed the Ravenswood Loan.

---

[†] Exhibits are numerically identified by reference to the number of the paragraph where the applicable exhibit first appears. Consequently, exhibit numbers in this complaint are *not* consecutive.

3523340_5

22.     Before failing, Ravenswood Bank assigned the Ravenswood Loan to the Hypo Loan Borrower under the Assignment and Assignment of Mortgage respectively attached as **Composite Exhibit 22** to this complaint.

23.     North Community Bank was the original lender under each North Community Loan. Each North Community Loan is secured by a mortgage against the Property (that mortgage identified in more detail in paragraph **88** the **"North Community Mortgage"**).

24.     Before failing, North Community Bank transferred North Community Loan to the Hypo Loan Borrower under the Assignment attached as **Exhibit 24** to this complaint.

25.     Later, as collateral for the Hypo Loan, the Hypo Loan Borrower hypothecated each Mortgage Loan—the Ravenswood Loan and each North Community Loan—to First Chicago by collaterally assigning each Mortgage Loan to First Chicago respectively under the two Collateral Assignments of Loan Documents attached as **Exhibit 25-1** and **Exhibit 25-2** to this complaint (the "**Collateral Assignments**").   Under the Collateral Assignments, the Hypo Loan Borrower granted a security interest against each Mortgage Loan to First Chicago. As receiver for First Chicago, the Receiver succeeded to First Chicago's security interests against the Mortgage Loans.

26.     After the Hypo Loan Borrower defaulted under the Hypo Loan, in addition to filing the original complaint in this case, the Receiver enforced the Receiver's security interest against the Mortgage Loans by selling the Mortgage Loans at a public sale under Section 9-610 of the Uniform Commercial Code. The Receiver held that sale on August 16, 2012 (the "**UCC Sale Date**"). The Receiver was winning bidder at that sale by credit bidding $746,963 for the Mortgage Loans. After that sale, the Receiver became the holder of each Mortgage Note (defined below),

3523340_5

the mortgagee under each Mortgage (defined below), and the beneficiary of each Ravenswood Guaranty (defined below).

27.     The assignments, allonges, bill of sale, certificate, and other documents attached as **Composite Exhibit 27** to this complaint show the transfer of the Mortgage Loan Documents (defined below) from the Hypo Loan Borrower to the Receiver under the UCC sale.

28.     The Receiver now sues to enforce the Hypo Loan and each Mortgage Loan respectively as alleged further below.

COUNT I
BREACH OF NOTE

29.     The Receiver incorporates the allegations of the preamble and paragraphs 1 through 28 as if restated in their entirety in this paragraph 29.

30.     The Hypo Loan Borrower defaulted under the Hypo Loan Note by failing to pay the required monthly payments when due. The Receiver has not received a payment since before July 1, 2011.

31.     Under the Hypo Loan Note, the Receiver is *not* obliged to give the Hypo Loan Borrower notice of any default, or any opportunity to cure any default. But as a courtesy to the Hypo Loan Borrower, on June 1, 2012, the Receiver's lawyers sent a letter to the Debtors informing them that they were each in default under the Hypo Loan Note and Hypo Loan Guaranty respectively and requesting that one, or both of them, cure those defaults (the **"Hypo Loan Notice of Default"**). A copy of the Hypo Loan Notice of Default is attached as **Exhibit 31** to this complaint.

32.     If the Hypo Loan Borrower defaults under the Hypo Loan Note, the Section titled "REMEDIES" on page 3 of the Hypo Loan Note allows the Receiver to accelerate all principal and interest due under the Hypo Loan Note, obligating the Hypo Loan Borrower to pay those full

8

amounts immediately. Under the Hypo Loan Note, the Receiver is *not* obliged to give notice of acceleration to either Debtor.

33.     The Receiver accelerated the principal and interest due under the Hypo Loan Note, rendering the full principal and interest balances under the Hypo Loan Note immediately due. Still, neither Debtor paid the amount due. The Receiver has satisfied all conditions required to enforce the Hypo Loan Note, or those conditions have been waived or excused.

34.     Under the Hypo Loan Note, as of the UCC Sale Date:

a.     The principal balance remaining was $924,298.26

b.     Accrued *regular* interest due as of June 18, 2012 (the **"Hypo Loan Payoff Statement Date"**) was $61,459.42.

c.     Accrued *default* interest due as of the Hypo Loan Payoff Statement Date was $36,253.03.

d.     Late fees were $3,276.

e.     $15,527.03 in default interest accrued between the Hypo Loan Payoff Statement Date and UCC Sale Date at a *per diem* rate of $263.17.

f.     *Less* a $746,963 credit for the sale price of the Mortgage Loans at the UCC sale.

g.     **For a total due of $293,850.74.**

35.     Default interest also continues to accrue under the Hypo Loan Note *after* the UCC Sale Date at the rate of $50.49 per day.

36.     The Section titled "REMEDIES" on page 3 of the Hypo Loan Note also provides that the Hypo Loan Borrower must pay for the Receiver's attorneys fees and costs if the Receiver hires an attorney to assist in collecting under the Hypo Loan Note. The Receiver has hired attorneys to assist in enforcement of, and collection under, the Hypo Loan Note and the Hypo Loan Borrower is obliged to pay those attorneys fees and costs.

9

**COUNT I**
**REQUEST FOR RELIEF**

The Receiver requests the following relief:

- Judgment against the Hypo Loan Borrower in at least the amount of **$293,850.74**, plus *per diem* interest at the rate identified in paragraph 35 for each day after the UCC Sale Date, and plus reasonable attorneys fees and costs

- Other relief this court considers just and proper

**COUNT II**
**BREACH OF GUARANTY**

37.     The Receiver incorporates the allegations of the preamble and paragraphs 1 through 36 as if restated in their entirety in this paragraph 37.

38.     The Receiver sues the Hypo Loan Guarantor for failure to pay under a guaranty.

39.     The Hypo Loan Guarantor manually subscribed and delivered to First Chicago an Amended and Restated Continuing Unconditional Guaranty dated May 19, 2010 (the **"Hypo Loan Guaranty"**). Under the Hypo Loan Guaranty, the Hypo Loan Guarantor guaranteed to First Chicago performance of the Hypo Loan Borrower's duties under the Hypo Loan Note and other documents related to the Hypo Loan (collectively, the **"Hypo Loan Documents"**). A copy of the Hypo Loan Guaranty is attached as **Exhibit 39** to this complaint.

40.     The Hypo Loan Guarantor remains liable to the Receiver under the Hypo Loan Guaranty. The Receiver has satisfied all conditions required to enforce the Hypo Loan Guaranty, or those conditions have been waived or excused.

41.     The Hypo Loan Borrower has defaulted under the Hypo Loan Note and has not cured those defaults. The Receiver accelerated all principal, interest, and other amounts due under the Hypo Loan Note. The amounts identified in paragraph 34, plus per diem interest

10

identified in paragraphs 35 and attorneys fees and costs, are due under the Hypo Loan Note. Neither the Hypo Loan Borrower, nor the Hypo Loan Guarantor has paid those amounts due.

42.     Under the sixth grammatical paragraph on page 1 of the Hypo Loan Guaranty, the Hypo Loan Guarantor agrees to pay the Receiver's attorneys fees and costs to enforce the Hypo Loan Guaranty. The Receiver has hired attorneys to assist in enforcement of, and collection under, the Hypo Loan Guaranty and the Hypo Loan Guarantor is obliged to pay those attorneys fees and costs.

## COUNT II

## REQUEST FOR RELIEF

The Receiver requests the following relief:

- Judgment against the Hypo Loan Guarantor in at least the amount of **$293,850.74**, plus *per diem* interest at the rate identified in paragraph 35 for each day after the UCC Sale Date, and plus reasonable attorneys fees and costs

- Other relief this court considers just and proper

## COUNT III
## BREACH OF RAVENSWOOD NOTE

43.     The Receiver incorporates the allegations of the preamble and paragraphs 1 through 28 as if restated in their entirety in this paragraph 43.

44.     On February 28, 2003, Ravenswood Bank, loaned $750,000 to Good Times under the Ravenswood Loan. In exchange, Good Times made—by manually subscribing—a Promissory Note in the principal amount of $750,000 payable to the order of Ravenswood Bank (the **"Original Ravenswood Note"**). A copy of the Original Ravenswood Note is attached as **Exhibit 44** to this complaint.

45.     On March 16, 2006, Ravenswood Bank and the Ravenswood Borrowers entered into a Change in Terms Agreement (the **"Ravenswood Change Agreement"**). The Ravenswood

3523340_5

Change Agreement amended select terms of the Original Ravenswood Note, including the principal amount, interest rate, and the monthly payments. Additionally, the Ravenswood Change Agreement added Blue Bayou as an additional borrower under the Ravenswood Note. A copy of the Ravenswood Change Agreement is attached as **Exhibit 45** to this complaint. The Original Ravenswood Note, together with, and as modified by, the Ravenswood Change Agreement, are referred to collectively in this complaint as the **"Ravenswood Note"**.

46. The Ravenswood Note requires monthly payments of principal and accrued and unpaid interest. Additionally, the Ravenswood Note matured on March 1, 2008 and all amounts due under the Ravenswood Note were due by March 1, 2008.

47. The Ravenswood Borrowers each defaulted under the Ravenswood Note by (a) failing to pay the required monthly payments when due and (b) failing to pay all amounts due by the maturity date—March 1, 2008.

48. Under the Ravenswood Note, the Receiver is *not* obliged to give the Ravenswood Debtors notice of any default or any opportunity to cure any default. But as a courtesy to the Ravenswood Debtors, on September 25, 2012, the Receiver's lawyer sent a letter to the Ravenswood Debtors informing the Ravenswood Debtors that the Ravenswood Debtors were in default under the Ravenswood Loan Documents and requesting that the Ravenswood Debtors cure those defaults (the **"Ravenswood Notice of Default"**). A copy of the Ravenswood Notice of Default is attached as **Exhibit 48** to this complaint.

49. If the Ravenswood Borrowers default under the Ravenswood Note, the Section titled "LENDER'S RIGHTS" on page 2 of the Ravenswood Note allows the Receiver to accelerate all principal and interest due under the Ravenswood Note, obligating the Ravenswood

12

Borrowers to pay those full amounts immediately. The Receiver is not obliged to give notice of acceleration to the Ravenswood Borrowers under the Ravenswood Note.

50.     The Receiver accelerated the principal and interest due under the Ravenswood Note, rendering the full principal and interest balances under the Ravenswood Note immediately due. Moreover, because the maturity date under the Ravenswood Note has passed, all amounts due under the Ravenswood Note are due. Still, the Ravenswood Borrowers did not pay the amount due. The Receiver has satisfied all conditions required to enforce the Ravenswood Note, or those conditions have been waived or excused.

51.     Under the Ravenswood Note, as of September 18, 2012 (the **"Ravenswood Payoff Statement Date"**):

        a.     The principal balance remaining was $833,210.57.

        b.     Accrued *regular* interest due was $440,305.50.

        c.     Accrued *default* interest due was $273,339.36.

        d.     Late fees were $64,317.90.

        e.     **For a total due of $1,611,173.33**.

52.     Default interest also continues to accrue under the Ravenswood Note *after the Ravenswood Payoff Statement Date* at the rate of $300.88 per day.

53.     The Section titled "ATTORNEYS' FEES; EXPENSES" on page 2 of the Ravenswood Note also provides that the Ravenswood Borrowers must pay for the Receiver's attorneys fees and costs if the Receiver hires an attorney to assist in collecting under the Ravenswood Note. The Receiver has hired attorneys to assist in enforcement of, and collection under, the Ravenswood Note and the Ravenswood Borrowers are obliged to pay those attorneys fees and costs.

3523340_5

## COUNT III
## REQUEST FOR RELIEF

The Receiver requests the following relief:

- Judgment against the Ravenswood Borrowers in at least the amount of **$1,611,173.33**, plus *per diem* interest at the rate identified in paragraph 52 for each day after the Ravenswood Payoff Statement Date, and plus reasonable attorneys fees and costs

- Other relief this court considers just and proper

## COUNT IV
## FORECLOSURE OF RAVENSWOOD MORTGAGE

54.     The Receiver incorporates the allegations of the preamble and paragraphs 1 through 28 and 43 through 53 as if restated in their entirety in this paragraph 54.

55.     The Receiver sues to foreclose the Ravenswood Mortgage against the Property and joins the following persons as defendants: (a) North Star, (b) each Ravenswood Debtor respectively, (c) each North Community Borrower respectively, (d) Northbrook Bank & Trust, (e) the City (f) Blue Bayou *Southport*, (g) B.B. Southport, (h) unknown owners, and (i) non-record claimants.

56.     Attached as **Composite Exhibit 56** to this complaint is a copy of the Ravenswood Mortgage and documents showing transfer of the Ravenswood Mortgage from Ravenswood Bank to the Receiver. The Ravenswood Mortgage secures the Ravenswood Note.

57.     Information concerning the Ravenswood Mortgage:

    a.      Nature of instrument: Mortgage and Security Agreement.

    b.      Date of instrument: February 28, 2003.

    c.      Name of mortgagor: North Star.

    d.      Name of mortgagee: Ravenswood Bank.

14

3523340_5

e.      Date and place of recording: March 5, 2003; Cook County, Illinois.

f.      Identification of recording: **0030306242.**

g.      Interest subject to the mortgage: Fee simple.

h.      Amount of original indebtedness: $750,000.

i.      Legal description of the Property, PIN, and common address:

LOT 10 IN BLOCK 2 IN ROOD'S SUBDIVISION OF THE NORTHEAST ¼ OF THE SOUTHWEST ¼ OF THE NORTHWEST ¼ OF SECTION 20, TOWNSHIP 40 NORTH, RANGE 14 EAST OF THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Tax identification number:

**14-20-114-031-0000**

Common address:

**3734 North Southport Avenue, Chicago, Illinois 60613**

j.      Statements as to defaults, including, but not necessarily limited to, date of default, current and unpaid principal balance, per diem interest accruing and any other information concerning the default: defaults include, but are not limited to, the failure to make required payments when due.

**The amounts due are identified in paragraphs 51 and 52**.

k.      Name of the present owner of the Property: North Star

l.      Names of other persons who were joined as defendants and whose interest in or lien against the Property is sought to be terminated:

- Each Ravenswood Borrower
- Each Ravenswood Guarantor
- Northbrook Bank & Trust
- The City
- Blue Bayou *Southport*
- B.B. Southport
- Unknown owners
- Non-record claimants

m.     Name of persons claimed to be personally liable for a deficiency, if any:

15

- Each Ravenswood Borrower
- Each Ravenswood Guarantor

n.  Capacity in which the Receiver brings this foreclosure:

> As the holder of the Ravenswood Note, and mortgagee under the Ravenswood Mortgage.

o.  Facts supporting redemption period shorter than the *longer* of: (i) six months from the date the mortgagor (or, if more than one mortgagor, all the mortgagors) (a) have been served with a summons or by publication; or (b) have otherwise submitted to the jurisdiction of the court; and (ii) three months from the entry of the judgment of foreclosure, if sought:

> The property is *not* residential real estate as defined by the Illinois Mortgage Foreclosure Law.

p.  Facts supporting request for attorneys fees and of costs and expenses, if applicable:

> Under the Section titled "ATTORNEYS' FEES; EXPENSES" on pages 9-10 of the Ravenswood Mortgage, the Receiver may recover attorneys fees and other costs, in any suit to foreclose the Ravenswood Mortgage. The Receiver has hired lawyers to foreclose the Ravenswood Mortgage and incurred substantial attorneys fees, court costs, and other expenses that must be added to the debt secured by the Ravenswood Mortgage.

q.  Facts supporting request for appointment of mortgagee in possession or for the appointment of a receiver, and the identity of such receiver, if sought:

> The Section titled "MORTGAGEE IN POSSESSION" on pages 9 of the Ravenswood Mortgage.

r.  Intentionally omitted.

s.  Name or names of defendants whose right to possess the Property, after the confirmation of a foreclosure sale, are sought to be terminated:

- Each Ravenswood Borrower
- Each Ravenswood Guarantor
- Unknown owners
- Non-record claimants

3523340_5

## COUNT IV
## REQUEST FOR RELIEF

The Receiver requests the following relief:

- A judgment of foreclosure and sale against the Property, providing that the Ravenswood Mortgage is senior to all other liens or interests claimed in, or against, the Property

- An order granting possession of the Property to the Receiver

- A judgment for attorneys fees, costs, and expenses, including, but not limited to, any expenses relating to preserving the Property, protecting the Receiver's interests, or both

- A judgment against those identified in paragraph 57.m for a deficiency after a judicial sale if the proceeds of the sale do not fully satisfy the debt secured by the Ravenswood Mortgage

- Any other relief this court considers just and proper

## COUNT V
## BREACH OF RAVENSWOOD GUARANTEES

58.     The Receiver incorporates the allegations of the preamble and paragraphs 1 through 28 and paragraphs 43 through 53 as if restated in their entirety in this paragraph 58.

59.     The Receiver sues each Ravenswood Guarantor for failure to pay under each Ravenswood Guaranty respectively.

60.     The Ravenswood Guarantors—Henaghan, Cullen, and Platt—each respectively manually subscribed and delivered to First Chicago a commercial guaranty dated February 28, 2003 (collectively, the **"Ravenswood Guarantees"**, and each individually a **"Ravenswood Guaranty"**). A copy of each Ravenswood Guaranty is attached in **Composite Exhibit 60** to this complaint.

61. Each Ravenswood Guarantor also manually subscribed the Ravenswood Change Agreement agreeing to the terms of the Ravenswood Change Agreement and any effect the Ravenswood Change Agreement may have on any Ravenswood Guaranty.

62. Under each Ravenswood Guaranty, each Ravenswood Guarantor guaranteed to First Chicago performance of the Ravenswood Borrowers' duties under the Ravenswood Note, the Ravenswood Mortgage, and other documents related to the Ravenswood Loan (collectively, the **"Ravenswood Loan Documents"**).

63. The Ravenswood Guarantors each remain liable to the Receiver under the Ravenswood Guarantees. The Receiver has satisfied all conditions required to enforce the Ravenswood Guarantees, or those conditions have been waived or excused.

64. The Ravenswood Borrowers have defaulted under the Ravenswood Note and have not cured those defaults. The Receiver (or the Receiver's predecessors) accelerated all principal, interest, and other amounts due under the Ravenswood Note. And the Ravenswood Note has matured so that all amounts due under the Ravenswood Note are now due. The amounts identified in paragraph 51, plus *per diem* interest identified in paragraph 52 and attorneys fees and costs, are due under the Ravenswood Note. Neither the Ravenswood Borrowers, nor any of the Ravenswood Guarantors have paid those amounts due.

65. Under the Section titled "ATTORNEYS' FEES; EXPENSES" on page 2 of the each of the Ravenswood Guaranty, each Ravenswood Guarantor respectively agrees to pay the Receiver's attorneys fees and costs to enforce the Ravenswood Guarantees. The Receiver has hired attorneys to assist in enforcement of, and collection under, the Ravenswood Guarantees, and each Ravenswood Guarantor is obliged to pay those attorneys fees and costs.

3523340_5

COUNT V
REQUEST FOR RELIEF

The Receiver requests the following relief:

- Judgment against each Ravenswood Guarantor respectively in at least the amount of **$1,611,173.33**, plus *per diem* interest at the rate identified in paragraph 52 for each day after the Ravenswood Payoff Statement Date, and plus reasonable attorneys fees and costs

- Other relief this Court considers just and proper

COUNT VI
BREACH OF $10K NOTE

66.     The Receiver incorporates the allegations of the preamble and paragraphs 1 through 28 as if restated in their entirety in this paragraph 66.

67.     On January 5, 2007, North Community Bank loaned $10,000 to the North Community Borrowers (the **"$10K Loan"**). In exchange, the North Community Borrowers made—by manually subscribing—a Promissory Note in the principal amount of $10,000 payable to the order of North Community Bank (the **"$10K Note"**). A copy of the $10K Note is attached as **Exhibit 67** to this complaint.

68.     The $10K Note required monthly payments of accrued and unpaid interest. And the $10K Note matured on May 5, 2007.

69.     The North Community Borrowers defaulted under the $10K Note by failing to pay the required monthly payments when due and failing to pay the full amount due under the $10K Note when the $10K Note matured.

70.     Under the $10K Note, the Receiver is not obliged to give the North Community Borrowers notice of any default or any opportunity to cure any default. But as a courtesy to the North Community Borrowers, on September 25, 2012, the Receiver's lawyers sent a notice of default (the **"North Community Notice of Default"**) to the North Community Borrowers

19

informing the North Community Borrowers that the North Community Borrowers were in default under the $10K Note and requesting that the North Community Borrowers cure those defaults. The North Community Notice of Default is attached as **Exhibit 70** to this complaint.

71.     If the North Community Borrowers default under the $10K Note, the Section titled "LENDER'S RIGHTS" on page 1 of the $10K Note allows the Receiver to accelerate all principal and interest due under the $10K Note, obligating the North Community Borrowers to pay those full amounts immediately.  The Receiver is not obliged to give notice of acceleration to the North Community Borrowers under the $10K Note.

72.     The Receiver accelerated the principal and interest due under the $10K Note, rendering the full principal and interest balances under the $10K Note immediately due. Moreover, the full amount under the $10K Note is due because the $10K Note has matured. Still, the North Community Borrowers did not pay the amount due. The Receiver has satisfied all conditions required to enforce the $10K Note, or those conditions have been waived or excused.

73.     Under the $10K Note, as of September 18, 2012 (the **"$10K Payoff Statement Date"**):

        a.     The principal balance remaining was $10,000.

        b.     Accrued *regular* interest due was $6,943.33.

        c.     Accrued *default* interest due was $2,811.11.

        d.     Late fees were $1,621.32.

        e.     **For a total due of $21,375.76**.

74.     Default interest also continues to accrue under the $10K Note *after the $10K Payoff Statement Date* at the rate of $4.72 per day.

20

75.     The Section titled "ATTORNEYS' FEES; EXPENSES" on page 1 of the $10K Note also provides that the North Community Borrowers must pay for the Receiver's attorneys fees and costs if the Receiver hires an attorney to assist in collecting under the $10K Note.  The Receiver has hired attorneys to assist in enforcement of, and collection under, the $10K Note and the North Community Borrowers are obliged to pay those attorneys fees and costs.

## COUNT VI
## REQUEST FOR RELIEF

The Receiver requests the following relief:

- Judgment against each of the North Community Borrowers in at least the amount of **$21,375.76**, plus *per diem* interest at the rate identified in paragraph 74 for each day after the $10K Payoff Statement Date, and plus reasonable attorneys fees and costs

- Other relief this court considers just and proper

## COUNT VII
## BREACH OF $75K NOTE

76.     The Receiver incorporates the allegations of the preamble and paragraphs 1 through 28 and 66 through 75 as if restated in their entirety in this paragraph 76.

77.     On March 13, 2006, North Community Bank loaned $75,000 to the North Community Borrowers (the **"$75K Loan"**, together with the $10K Loan collectively, the **"North Community Loans"** and the North Community Loans together with the Ravenswood Loan collectively, the **"Mortgage Loans"**).  In exchange, the North Community Borrowers made—by manually subscribing—a Promissory Note in the principal amount of $75,000 payable to the order of North Community Bank (the **"$75K Note"** together with the $10K Note collectively, the **"North Community Notes"**, and the North Community Notes together with the Ravenswood Note collectively, the **"Mortgage Notes"**, and each individually, a **"Mortgage Note"**).  A copy of the $75K Note is attached as **Exhibit 77** to this complaint.

21

78.     The $75K Note required monthly payments of accrued and unpaid interest. And the $75K Note matured on May 13, 2007.

79.     The North Community Borrowers defaulted under the $75K Note by failing to pay the full amount due under the $75K Note when the $75K Note matured.

80.     Under the $75K Note, the Receiver is not obliged to give the North Community Borrowers notice of any default or any opportunity to cure any default. But as a courtesy to the North Community Borrowers, the North Community Notice of Default also informed the North Community Borrowers that the North Community Borrowers were in default under the $75K Note and the North Community Notice of Default also requested that the North Community Borrowers cure those defaults.

81.     The full amount under the $75K Note is due because the $10K Note has matured. Still, the North Community Borrowers did not pay the amount due. The Receiver has satisfied all conditions required to enforce the $75K Note, or those conditions have been waived or excused.

82.     Under the $75K Note, as of September 18, 2012 (the **"$75K Payoff Statement Date"**):

> a.     The principal balance remaining was $75,000.
>
> b.     Accrued *regular* interest due was $39,617.33.
>
> c.     Accrued *default* interest due was $23,843.75.
>
> d.     Late fees were $11,454.18.
>
> e.     **For a total due of $149,915.26**.

83.     Default interest also continues to accrue under the $75K Note *after the First North Community Payoff Statement Date* at the rate of $32.30 per day.

22

84.     The Section titled "ATTORNEYS' FEES; EXPENSES" on page 2 of the $75K Note also provides that the North Community Borrowers must pay for the Receiver's attorneys fees and costs if the Receiver hires an attorney to assist in collecting under the $75K Note. The Receiver has hired attorneys to assist in enforcement of, and collection under, the $75K Note and the North Community Borrowers are obliged to pay those attorneys fees and costs.

## COUNT VII
## REQUEST FOR RELIEF

The Receiver requests the following relief:

- Judgment against each of the North Community Borrowers in at least the amount of **$149,915.26** plus *per diem* interest at the rate identified in paragraph 83 for each day after the $75K Payoff Statement Date, and plus reasonable attorneys fees and costs

- Other relief this court considers just and proper

## COUNT VIII
## FORECLOSURE OF NORTH COMMUNITY MORTGAGE

85.     The Receiver incorporates the allegations of the preamble, paragraphs 1 through 28, and paragraphs 66 through 75, as if restated in their entirety in this paragraph 85.

86.     The Receiver sues to foreclose the mortgage identified in this Count VIII (the **"North Community Mortgage"**, and referred to together with the Ravenswood Mortgage collectively, the **"Mortgages"** and each individually, a **"Mortgage"**) and joins the following persons as defendants: (a) North Star, (b) each of the North Community Borrowers, (c) each Ravenswood Debtor, (d) Northbrook Bank & Trust, (e) the City, (f) Blue Bayou *Southport*, (g) B.B. Southport, (h) unknown owners, and (i) non-record claimants.

87.     Attached as **Exhibit 87** to this complaint is a copy of the North Community Mortgage. The North Community Mortgage secures the $10K Note and the $75K Note.

88.     Information concerning the North Community Mortgage:

    a.      Nature of instrument:  Mortgage and Security Agreement.

b.      Date of instrument: May 13, 2003.

c.      Name of mortgagor: North Star.

d.      Name of mortgagee: North Community Bank.

e.      Date and place of recording: August 25, 2004; Cook County, Illinois.

f.      Identification of recording: **0423831075**.

g.      Interest subject to the mortgage: Fee simple.

h.      Amount of original indebtedness: $75,000.

i.      Legal description of the Property, PIN, and common address:

LOT 10 IN BLOCK 2 IN ROOD'S SUBDIVISION OF THE NORTHEAST ¼ OF THE SOUTHWEST ¼ OF THE NORTHWEST ¼ OF SECTION 20, TOWNSHIP 40 NORTH, RANGE 14 EAST OF THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Tax identification number:

**14-20-114-031-0000**

Common address:

**3734 North Southport Avenue, Chicago, Illinois 60613**

j.      Statements as to defaults, including, but not necessarily limited to, date of default, current and unpaid principal balance, per diem interest accruing and any other information concerning the default: defaults include, but are not limited to, the failure to make required payments when due.

**The amounts due and owing are identified in Paragraphs 73, 74, 82, and 83 above**.

k.      Name of the present owner of the Property: North Star

l.      Names of other persons who were joined as defendants and whose interest in or lien on the Property is sought to be terminated:

- North Star
- Each North Community Borrower
- Each Ravenswood Debtor
- Northbrook Bank & Trust

3523340_5

- The City
- Blue Bayou *Southport*
- B.B. Southport
- Unknown owners
- Non-record claimants

m.    Name of persons claimed to be personally liable for a deficiency, if any:

- Each North Community Borrower

n.    Capacity in which plaintiff brings this foreclosure:

As the holder of the $10K Note and the $75K Note, and mortgagee under the North Community Mortgage.

o.    Facts in support of redemption period shorter than the *longer* of: (i) six months from the date the mortgagor (or, if more than one mortgagor, all the mortgagors) (a) have been served with a summons or by publication; or (b) have otherwise submitted to the jurisdiction of the court; and (ii) three months from the entry of the judgment of foreclosure, if sought:

The property is *not* residential real estate as defined by the Illinois Mortgage Foreclosure Law.

p.    Facts in support of request for attorneys fees and of costs and expenses, if applicable:

Under the Section titled "ATTORNEYS' FEES; EXPENSES" on page 10 of the North Community Mortgage, the Receiver may recover attorneys fees and other costs, in any suit to foreclose the North Community Mortgage. The Receiver has hired lawyers to foreclose the North Community Mortgage and incurred substantial attorneys fees, court costs, and other expenses that must be added to the debt secured by the North Community Mortgage.

q.    Facts in support of request for appointment of mortgagee in possession or for the appointment of a Receiver, and the identity of such Receiver, if sought:

The Section titled "MORTGAGEE IN POSSESSION" on page 9 of the North Community Mortgage.

r.    Intentionally omitted.

s.     Name or names of defendants whose right to possess the Property, after the confirmation of a foreclosure sale, is sought to be terminated:

- North Star
- Each North Community Borrower
- Each Ravenswood Debtor
- Northbrook Bank & Trust
- The City
- Blue Bayou *Southport*
- B.B. Southport
- Unknown owners
- Non-record claimants

## COUNT VIII
## REQUEST FOR RELIEF

The Receiver requests the following relief:

- A judgment of foreclosure and sale against the Property, providing that the North Community Mortgage is senior to all other liens or interests claimed in, or against, the Property, *except for the Ravenswood Mortgage*

- An order granting possession of the Property to the Receiver

- A judgment for attorneys fees, costs and expenses, including, but not limited to, any expenses relating to preserving the Property, protecting the Receiver's interests, or both

- A judgment against those identified in paragraph 88.m. for a deficiency after a judicial sale if the proceeds of sale do not fully satisfy the debt secured by the North Community Mortgage

3523340_5

- Any other relief this court considers just and proper

FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for First Chicago Bank & Trust

By: /s/ Joshua Glazov
One of Its Attorneys

Joshua Glazov (Atty. #6258029)
Edward D. Shapiro (Atty. #6226069)
Shawn K. Ronda (Atty. #6306861)
MUCH SHELIST, P.C.
191 North Wacker Drive, Suite 1800
Chicago, Illinois 60606-1615
Phone: (312) 521-2000
Fax: (312) 521-2559
E-Mail: jglazov@mushshelist.com
eshapiro@muchshelist.com
sronda@muchshelist.com

27

3523340_5

## CERTIFICATE OF SERVICE

I, Joshua Glazov, certify that on October 16, 2012, I electronically filed this **First Amended and Restated Complaint to Enforce Notes and Guarantees, to Foreclose Mortgages, and for Other Relief (3734 North Southport Avenue, Chicago, Illinois 60613)** with the Clerk of the Northern District of Illinois, using the CM/ECF system, which will send notification of such filing to the following counsel of record:

David E. Cohen
**FISHER COHEN WALDMAN SHAPIRO, LLP**
1247 Waukegan Rd., Suite 100
Glenview, IL 60025

/s/ Joshua Glazov

3523340_5